United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| VINNY M. BRICKETT and STEPHEN R. BRICKETT, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 13-10640-NMG |
| v. | ) ) ) | |
| HSBC BANK USA, N.A., | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

Here we have a case involving the legality of a foreclosure of a residential mortgage after the homeowners had filed an application for a loan modification. Plaintiffs Vinny and Stephen Brickett (collectively, "the Bricketts") brought suit in Massachusetts state court against HSBC Bank USA, N.A. ("HSBC") for a violation of (1) the mortgagee's obligation of good faith and reasonable diligence and (2) the Massachusetts Consumer Protection Act, M.G.L. c. 93A, § 9. Defendant promptly removed the case to this Court and, after discovery, the parties filed cross-motions for summary judgment. For the reasons that follow, the Court will allow HSBC's motion and deny the Bricketts' motion.[1]

---

[1] HSBC's pending motion to strike will be denied as moot.

## I. Background

### A. Factual Background

On March 22, 2004, plaintiffs purchased a residential property in Middleton, Massachusetts, financed by a note of $400,000 and secured by mortgage to HSBC. Both of the Bricketts signed the note and the mortgage agreeing to make the requisite monthly payments.

The Bricketts first fell into default on the mortgage in October, 2008 and then again in March, 2010. In both May and June of 2011, HSBC notified the Bricketts that they had the option to apply for a loan modification to cure their default. Both times the correspondence provided a list of required documents to be submitted with an application to initiate a review for a loan modification.

The Bricketts did not apply for a loan modification during 2011. Instead, they mailed three checks to HSBC, each of which was returned by HSBC with notification that the attempted payments failed to cure the default. Each letter from HSBC accompanying the returned checks explained that the loan had been referred to HSBC's foreclosure counsel to initiate foreclosure proceedings.

On June 22, 2012, HSBC's foreclosure counsel mailed a "Notice of Mortgage Foreclosure Sale" to the Bricketts' residence via certified mail. During the following three weeks,

HSBC's foreclosure counsel published in the Tri Town Transcript, the local newspaper in Middleton, the appropriate notice of the impending foreclosure sale, which was scheduled for July 25, 2012.

More than one year after falling into default on their mortgage for the second time, and only 12 days before the date of the scheduled foreclosure sale, the Bricketts began the process of applying for a loan modification. On July 13, 2012, Vinny Brickett accessed HSBC's website and downloaded a "Financial Workout Form." The workout form identified five additional items of required documentation that constituted a complete loan modification application: (1) a hardship letter, (2) copies of the past two years of tax returns, (3) copies of the past two months of bank statements, (4) copies of the past two pay stubs and (5) a copy of the listing agreement, if the property was currently listed for sale. The same documentation had been identified in each of the 2011 HSBC letters notifying the Bricketts of their option to apply for a loan modification.

Significantly, the workout form stated, in bold font, that the loan modification review "will not be initiated until all the required documentation is received."

Three days later, Ms. Brickett faxed a completed workout form to HSBC with some, but not all, of the required documentation. Her submission did not include copies of

complete tax returns of the Bricketts for 2010 and 2011 or the two most recent bank statements for all accounts held by the Bricketts. Furthermore, only Ms. Brickett signed the hardship letter despite the fact that both Bricketts were named on the note and mortgage.

On July 18, 2012, HSBC sent a letter to the Bricketts notifying them that their loan modification application was incomplete and could not be processed at that time. It requested the Bricketts' 2010 and 2011 income tax returns, including all accompanying schedules, which Ms. Brickett faxed to HSBC the following day. On July 23, two days before the scheduled foreclosure, HSBC sent the Bricketts another notification letter regarding their incomplete application and requested the two most recent monthly bank statements for the Bricketts. Each letter notifying the Bricketts of their incomplete loan modification application also stated

> [n]ote: If a foreclosure sale is scheduled on your property, that sale will not be postponed or cancelled by virtue of your submission of documentation in response to this letter.

The July 23 letter further stated that HSBC would "need a response no later than fifteen (15) business days from the date of this letter" in order to consider further their request for a loan modification.

On July 25, 2012, HSBC conducted a foreclosure sale on the Bricketts' property.

Within the following week, Ms. Brickett re-faxed the 2010 and 2011 income tax returns and faxed the requested bank statements.

On August 2, 2012, HSBC sent the Bricketts a letter informing them that it had received a "Voluntary Financial Disclosure Package" and that the Bricketts would be considered for a variety of retention options aimed at keeping the Bricketts in their home. That letter also informed them, however,

> [y]ou must understand that our receipt of your information does not in any way constitute an approval to delay or postpone any collection activity up to and including foreclosure.

It was not until August 11, 2012, upon HSBC's receipt of a signed and dated hardship letter, that the Bricketts' loan modification application was finally considered complete by HSBC. That was more than two weeks after HSBC had foreclosed on the Bricketts' residence.

### B. Procedural History

In February, 2013, the Bricketts filed a complaint against defendant in Middlesex County Superior Court asserting a single claim for breach of good faith and reasonable diligence. HSBC timely removed that suit to this Court and, in April, 2013, the

Bricketts filed an amended complaint adding a claim for a violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, § 9.

In December, 2013, defendant HSBC moved for summary judgment on both of plaintiffs' claims. In April, 2014, plaintiffs opposed HSBC's motion and filed a cross-motion for summary judgment.

## II. Parties' Cross-Motions for Summary Judgment

The gravamen of plaintiffs' complaint is that HSBC unjustly foreclosed on their residence after they had filed an application for a loan modification. Plaintiffs contend that such behavior was in direct violation of HSBC's own internal policies which prohibited a practice known as "dual-tracking," i.e., processing a loan for foreclosure while it is under review for a loan modification.

In its motion for summary judgment, HSBC argues that the undisputed facts in this case demonstrate that the Bricketts' loan modification application was incomplete until after the authorized foreclosure sale was conducted. HSBC contends that the financial workout form clearly stated that a loan modification would not be initiated until all of the required documentation was received, and its repeated correspondence with the Bricketts demonstrates that their application was incomplete prior to the foreclosure. Because there was no pending

-6-

application for loan modification HSBC asserts that their conduct did not constitute dual-tracking.

In their cross-motion for summary judgment, the Bricketts respond that they were, in fact, under review for a loan modification and that HSBC's actions therefore constitute impermissible dual-tracking. They allege that HSBC's actions contradicted both the Home Affordable Modification Program ("HAMP") guidelines and HSBC's own internal policies, and thus constituted a violation of (1) the common law duty of good faith and reasonable diligence owed by a foreclosing mortgagee to a mortgagor and (2) M.G.L. c. 93A's prohibition against unfair and deceptive trade practices.

**A.    Summary Judgment Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to provide specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**B.  Application**

   **1.  Duty of Good Faith and Reasonable Diligence (Count One)**

Based on the record at summary judgment, the Court concludes that HSBC is entitled to judgment as a matter of law on the Bricketts' allegation that the lender breached its duty of good faith and reasonable diligence.

Plaintiffs' argument that HSBC impermissibly "dual-tracked" by foreclosing on the Bricketts' residence while simultaneously considering their loan modification application is unavailing. The simple fact is that the Bricketts, who only applied for a loan modification less than two weeks before the scheduled foreclosure, were not under review for a loan modification prior to the foreclosure sale because they had not submitted a complete application sufficient to precipitate a review by HSBC. HSBC's financial workout form made it clear that loan modification review would not be <u>initiated</u> until all of the required documentation was received. In two subsequent letters to the Bricketts, HSBC notified them of the missing required documentation and forewarned that

> [i]f a foreclosure sale is scheduled on your property, that sale will not be postponed or cancelled by virtue of your submission of documentation in response to this letter.

HSBC never informed the Bricketts that their loan modification application had been accepted or that a loan modification was under review prior to the foreclosure sale. Rather than "stringing them along," HSBC highlighted the incomplete status of their modification application on multiple occasions. As such, the undisputed facts warrant finding that HSBC never engaged in dual-tracking in violation of either HAMP or its own internal company guidelines. Cf. Blackwood v. Wells

Fargo Bank, No. 10-cv-10483, 2011 WL 1561024, at *4 (D. Mass. April 22, 2011) (HAMP loan modification application was pending at time of foreclosure sale). Defendant's conduct did not violate the duty of good faith and reasonable diligence owed by the mortgagee.

> Mortgagees undoubtedly do have
>> an independent duty at common law to protect the interests of the mortgagor in exercising a power of sale in a mortgage.

Mackenzie v. Flagstar Bank, 738 F.3d 486, 493 (1st Cir. 2013). In the context of a foreclosure sale, that duty is discharged by making reasonable efforts to sell the property for the highest amount possible. Id. Absent a provision in the mortgage that specifically requires the mortgagee to negotiate a loan modification prior to conducting a foreclosure sale, a lender has no duty to do so. Id. (refusing to "extend the implied covenant [of good faith] to encompass a duty to modify (or consider modifying) the loan prior to foreclosure, where no such obligation exists in the mortgage").

Here, plaintiffs do not proffer any evidence that (1) the mortgage contract contained a provision requiring HSBC to negotiate prior to foreclosure or (2) HSBC conducted the mortgage sale in an unreasonable manner that would have prevented the property from being sold for the highest price possible. Instead, the undisputed facts show that HSBC provided

-10-

the Bricketts with the appropriate notice of a foreclosure sale and conducted the sale in compliance with both the mortgage terms and statutory requirements. See Figueroa v. Fed. Nat'l Mortg. Ass'n, No. 12-cv-11290, 2013 WL 2244348, at *3 (D. Mass. May 20, 2013).

Accordingly, defendant's motion for summary judgment on plaintiffs' claim for breach of the duty of good faith and reasonable diligence will be allowed.

### 2. Chapter 93A (Count Two)

The Court will also allow defendant's motion with respect to plaintiffs' Chapter 93A claim because it is based entirely on the failed claim for breach of the duty of good faith and reasonable diligence against HSBC. See Sonoran Scanners, Inc. v. PerkinElmer, Inc., 590 F. Supp. 2d 196, 212 (D. Mass. 2008), reversed in part on unrelated grounds, 585 F.2d 535 (1st Cir. 2009).

## ORDER

For the foregoing reasons, the motion for summary judgment of defendant HSBC (Docket No. 30) is **ALLOWED** and the motion for summary judgment of plaintiffs Vinny and Stephen Brickett (Docket No. 46) is **DENIED**. HSBC's motion to strike (Docket No. 64) is **DENIED** as moot.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated October 3, 2014